```
 1  THOMAS P. O'BRIEN
    United States Attorney
 2  CHRISTINE C. EWELL
    Assistant United States Attorney
 3  Chief, Criminal Division
    SANDY N. LEAL
 4  Assistant United States Attorney
    California Bar Number: 207179
 5       Ronald Reagan Federal Building & United States Courthouse
         411 West Fourth Street, 8th Floor
 6       Santa Ana, California 92701
         Telephone: (714) 338-3531
 7       Facsimile: (714) 338-3561
         E-mail:    Sandy.Leal@usdoj.gov
 8
    Attorneys for Plaintiff
 9  United States of America
```

FILED
CLERK, U.S. DISTRICT COURT

MAY - 7 2009

CENTRAL DISTRICT OF CALIFORNIA
BY R for KL6          DEPUTY

UNITED STATES DISTRICT COURT

FOR THE CENTRAL DISTRICT OF CALIFORNIA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | No. SA CR 09-95-CJC |
| Plaintiff, | ) | |
| | ) | GOVERNMENT'S MOTION FOR |
| v. | ) | DESIGNATION, ARREST, AND |
| | ) | DETENTION OF MATERIAL WITNESS; |
| DWAYNE LAWSON, | ) | MEMORANDUM OF POINTS AND |
|   aka "Dwayne Topaz Lawson," | ) | AUTHORITIES; AFFIDAVIT OF |
|   aka "Christopher Tyrone | ) | ASHLEY MERICLE |
|      Young," | ) | |
|   aka "Christopher T. Yoong," | ) | |
|   aka "Staydown," | ) | |
| | ) | |
|   Defendant. | ) | |

    Plaintiff, the United States of America, by and through its counsel of record, the United States of America for the Central District of California, hereby moves this Court for an order to designate, arrest, and detain SAMERA LATIFAH MULL ("MULL") as known as ("aka") "Honey," aka "Samera Mull," aka "Amber Nycole Erne," a material witness in the above-captioned case pursuant to Title 18, United States Code, Section 3144.

1  This motion is based upon the attached memorandum of
2  points and authorities, the attached affidavit of FBI Special
3  Agent Ashley Mericle, the files and records of this case, and on
4  such further evidence or argument the Court may allow at the
5  hearing on this motion.

6

7  DATED: May 7, 2009          Respectfully submitted,

8                              THOMAS P. O'BRIEN
                               United States Attorney
9
                               CHRISTINE C. EWELL
10                             Assistant United States Attorney
                               Chief, Criminal Division
11

12
                               /s/ Sandy N. Leal
13                             SANDY N. LEAL
                               Assistant United States Attorney
14
                               Attorneys for Plaintiff
15                             United States of America

16

17

18

19

20

21

22

23

24

25

26

27

28                                2

## MEMORANDUM OF POINTS AND AUTHORITIES

Title 18, United States Code, Section 3144, provides that where it appears by affidavit that "the testimony of a person is material in a criminal proceeding," and where it is "shown that it may become impracticable to secure the presence of the person by subpoena," the Court may order the arrest of the person and treat him/her in accordance with 18 U.S.C. § 3142.[1] Accordingly, the statute makes it clear that when the government believes that the normal subpoena process will not secure the presence of a witness to a crime, it may apply to the court for conditions to be imposed on the release of that person, pursuant to 18 U.S.C. § 3142.

The attached affidavit sets forth sufficient facts to find that the testimony of SAMERA LATIFAH MULL is material to the trial of this matter in that such testimony will establish that the person witnessed events necessary to a prosecution of the case and any suppression issues that might be raised.

It is clear that unless the presence of this person at trial is secured by adequate bond, it may well become impracticable to secure her presence by subpoena. In <u>United States v. Hart</u>, 546 F.2d 798, 800-801 (9th Cir. 1976), the Ninth Circuit held that the government was required to use "reasonable efforts" to produce at trial material witnesses, taking into account the

---

[1] Section 3142 requires the Court to order that, pending trial, the person be either (1) released on personal recognizance, an unsecured appearance bond, a secured appearance bond, or (2) detained. 18 U.S.C. § 3142(a)(1)-(4).

1

history and attitude of such witnesses. The court noted that the detention of material witnesses has been found appropriate in those cases where "[e]very self-interest [of the witnesses] was on the side of their fleeing the jurisdiction." Id. at 800.

In the present case, the witness, SAMERA LATIFAH MULL, is an 18-year old previously listed as a "Missing Child Endangered Runaway" from Memphis, Tennessee since March 4, 2006. The witness is currently detained at the Las Colinas Detention Facility in San Diego County pending completion of her state court criminal matters. Because MULL is an endangered runaway since March 2006, refuses to provide a permanent address, and indicated that she resides from hotel to hotel engaged in prostitution, this witness must be designated as a material witness and detained in order to ensure her presence at trial.

In light of the above, the government moves this Court to declare that SAMERA LATIFAH MULL is a material witness and issue an arrest warrant and detain her pursuant to 18 U.S.C. § 3144. It is suggested that only by such an order can a failure and frustration of justice be prevented.

**AFFIDAVIT**

I, Ashley L. Mericle, being duly sworn, do hereby depose and state:

## I. INTRODUCTION

1. I am a Special Agent ("SA") with the Federal Bureau of Investigation ("FBI"), and have been so employed for almost seven years. During my tenure as a special agent with the FBI, I have conducted and participated in dozens of investigations of criminal activity, including investigations of international terrorism, bank robbery, white collar crime, and child prostitution. During the investigation of these cases, I have participated in the execution of numerous search warrants, and seized evidence of such violations. I currently investigate, among other things, the sexual exploitation of children in the Central District of California.

## II. PURPOSE OF AFFIDAVIT

2. This affidavit is made pursuant to 18 U.S.C. § 3144 and in support of the government's motion for designation, arrest and detention of material witness SAMERA LATIFAH MULL ("MULL") also known as ("aka") "Honey," aka "Samera Mull," aka "Amber Nycole Erne," in connection with an indictment against DWAYNE LAWSON ("LAWSON"), also known as ("aka") "Dwayne Topaz Lawson," aka "Christopher Tyrone Young," aka "Staydown," aka "Christopher T. Yoong," for a violation of Title 18, United States Code, Section

1

1591(a): Sex Trafficking of Children. The statements contained in this affidavit are based upon my training and experience, information provided to me by other investigators, other law enforcement officers, and witnesses as part of this investigation. This affidavit is submitted solely for the purpose of establishing that the testimony of the foregoing material witness is material in a criminal proceeding and does not purport to set forth all of my knowledge of, or investigation into, the offense.

### III. PROBABLE CAUSE

3. On April 3, 2009, I spoke with Detective Dana Harris of the Los Angeles Police Department regarding a possible human trafficking victim. Detective Harris also provided me with a copy of an LAPD Investigative Report, DR-0999-14931. From our conversation and a review of this report, I learned the following:

   a. On March 24, 2009, a minor, who had not yet attained the age of 18 (hereinafter referred to as "FM"), was arrested for a violation of California Penal Code, Section 647(b): Prostitution. FM was initially believed to be an adult. However, FM was subsequently determined to be a reported endangered runaway minor out of the Marion County Sheriff's Department in Ocala, Florida. Based on LAPD's investigation and interview of FM, it was determined that FM was a victim of

2

"pimping."[1]

4. On April 3, 2009, I interviewed FM and learned the following:

a. In or about October 2008, "Mr. Staydown" found FM on her www.myspace.com internet web page. FM's www.myspace.com profile states she is seventeen years old. FM started chatting with "Mr. Staydown" on the computer, and then began speaking to him on the phone. During one telephone conversation, "Mr. Staydown" asked FM when she is going to turn eighteen. FM informed "Mr. Staydown" when she is going to turn eighteen.

b. FM was shown a photo spread containing six photographs numbered one through six. The photo spread contains the photograph of LAWSON in the second slot of the spread. FM identified photo number two as "Mr. Staydown" and indicated that his real name is "Christopher Young."

c. In or about November 2008, LAWSON purchased a Greyhound bus ticket for FM to travel from Florida to Las Vegas, Nevada. LAWSON told FM that he had a house, cars, and money. FM thought she was going to be a star.

d. LAWSON instructed FM to pick up her bus ticket from the Greyhound bus terminal, that the ticket was under the name "Nicole Smith," and that the password was "myspace." FM

---

[1] Based on my training and experience, "pimping" is the process by which a male or female is found and managed for prostitution in order to profit from their earnings.

3

successfully picked up the bus ticket and traveled for three days on a Greyhound bus from Florida to Las Vegas, Nevada.

    e.    LAWSON took FM to the Country Inn on Flamingo Road in Las Vegas, Nevada. At the hotel room, FM met another person by the name of "Honey." FM also knows "Honey" by the name "Samera Mull." (subsequently identified as MULL). FM described MULL as LAWSON's "bottom girl."[2] FM believes that MULL has been working as a prostitute for LAWSON since she was fifteen years old.

    f.    The next day, LAWSON drove FM and MULL from Las Vegas, Nevada to Orange County, California. LAWSON made FM leave all of her belongings, including her clothing. LAWSON told FM that she did not need them anymore. FM wore MULL's clothing until she reached California.

    g.    LAWSON checked into the Motel 6 on Dyer Road in Anaheim, California. LAWSON told FM that she needed to make YOUNG some money. This is the first time that FM "turned a trick."[3]

    h.    LAWSON told FM the rules. For example, LAWSON

---

[2] Based on my training and experience, "bottom girl" is a title given to a prostitute who is the most trusted by the pimp. The bottom girl may be assigned tasks such as recruiting other prostitutes, transporting other prostitutes to and from areas where they work, and other tasks that put distance between the pimp and the activities engaged in by his prostitutes.

[3] Based on my training and experience, "turning a trick" refers to the act of engaging in sex in exchange for money.

4

told FM she was not supposed to kiss the men on the mouth. LAWSON told FM how much to charge for turning tricks.

  i. LAWSON and MULL took photographs of FM. Some of the photographs showed FM's bare breasts, buttocks, and vagina. LAWSON placed the photographs in a posting on the website www.craigslist.org for the Orange County area. In this posting, FM was advertised for sex. LAWSON gave FM the name "Krissy" in the www.craigslist.org postings. LAWSON also gave FM a cellular telephone. This cellular telephone number was posted on the www.craigslist.org advertisement.

  j. LAWSON and MULL coached FM on how to talk to the individuals ("customers") calling the cellular telephone. LAWSON and MULL would whisper to FM what to say to customers calling the cellular telephone.

  k. LAWSON and MULL told FM how much to charge for sexual favors. LAWSON and MULL told FM to charge $120.00 for one half hour, and $250.00 for one full hour. FM performed oral sex and had vaginal intercourse with customers who called the cellular telephone.

  l. After FM met with customer for the purpose of engaging in sexual acts for money, LAWSON would go to FM to collect the money from FM. FM did not keep any of the money. All of the money was given to LAWSON.

m. Eventually, LAWSON put FM "on the track."[4] FM worked the track for LAWSON in Anaheim, Pomona, and Montclair, California, and Las Vegas, Nevada. MULL also taught FM how to work the track.

n. LAWSON eventually took FM to San Diego, California. LAWSON told FM that she needed to make at least $500.00 per night while working in San Diego, California. LAWSON made FM walk the track in El Cajon, California for three days. LAWSON got a room at either the Days Inn or the Howard Johnson in El Cajon, California.

o. While working in the San Diego, California vicinity, FM began experiencing severe pain during intercourse. FM asked LAWSON to take her to a doctor. LAWSON did not want to take FM to a doctor. Eventually, FM convinced LAWSON she needed to go to the hospital. LAWSON dropped off FM at a hospital in El Cajon, California. A doctor told FM she had vaginal tearing and bruising, and advised her not to have sexual intercourse for at least one week. FM asked the doctor to put it in writing so she could show LAWSON, so she didn't have to have intercourse for a week. LAWSON told FM she could still make money with her mouth.

p. On or about February 13, 2009, FM tried to leave LAWSON in San Diego, California. FM paid for a bus ticket and

---

[4] Based on my training and experience, the "track" is any street or area where prostitutes commonly engage in soliciting for prostitution.

got on a Greyhound bus to get away from LAWSON. LAWSON consistently called FM while she was away. FM eventually answered one of LAWSON's phone calls. LAWSON was nice to FM, and acted sad that she had left. LAWSON talked FM into returning to LAWSON. FM got off the bus and took a cab back to LAWSON. When FM returned to LAWSON, LAWSON took off his rings and told FM he would "beat her ass" if she left him again. LAWSON took FM's cellular telephone away.

    q.   On another occasion, FM saw LAWSON hit MULL. LAWSON got mad at MULL for losing her phone. LAWSON hit MULL numerous times while they were in a car. After the beating, MULL ran away. LAWSON eventually found MULL. FM has seen LAWSON hit MULL a couple of times. Seeing LAWSON hit MULL made FM upset and scared.

    5.   I reviewed the National Center for Missing and Exploited Children website and observed a poster for a missing female. Depicted in the poster was a photo of FM, with the words "Endangered Runaway" on the top of the poster. The poster stated FM was last seen in October 2008 in Ocala, Florida.

    6.   On April 7, 2009, I spoke with SDSD Deputy Sheriff Ingraham regarding MULL. I also reviewed a San Diego County Sheriff's Department Arrest/Juvenile Contact Report, dated March 18, 2009, Case Number 09025173. Based on a review of this report and my conversation with SDSD Deputy Ingraham, I learned the

following:

a. On March 17, 2009, while scanning the www.craigslist.org advertisements under "erotic services" posted for the San Diego North County area, Deputy Ingraham found a posting for "Honey," who he subsequently identified as MULL. Deputy Ingraham also learned that MULL had an outstanding warrant for her arrest, warrant number M066878, issued on February 25, 2009, for violations of California Penal Code, Sections 653.22(a) (Loitering with Intent to Commit Prostitution), 148.9 (False Representation of Identity to a Peace Officer), 529(3) (False Personation of Another).

b. In an attempt to locate MULL, Deputy Ingraham responded to the www.craigslist.org posting and set up a meeting at the Ramada Inn in San Marcos, California.

c. Deputy Ingraham requested that SDSD Deputy Jeff Cruz clear the area. Deputy Cruz advised Deputy Ingraham that he observed a dark blue Chevy Tahoe with large custom chrome rims in the parking lot of the Ramada Inn. Deputy Cruz observed a large black male associated with the vehicle. Deputy Cruz observed the California license plates on the vehicle to be 6GSL663 (vehicle registered to "Christopher T. Yoong").

d. Deputy Ingraham contacted MULL telephonically and MULL told Deputy Ingraham that she was going to change rooms and would call back. Deputy Ingraham checked with the front desk and

8

learned that MULL was checked into room number 231. Deputy Ingraham proceeded to room number 231 and observed a female matching the description of MULL. Deputy Ingraham arrested and detained MULL inside the room and she identified herself as MULL.

e. MULL was in possession of a fraudulent Florida driver's license, number G526-730-86-512-0, in the name MULL, date of birth 1986.

f. Inside room number 231, Deputy Ingraham observed several pairs of large men's shoes and a man's jacket. Deputy Ingraham also observed a red Gateway M-6878 laptop computer, serial number 82700010526, on the bed. The laptop computer was open and the screen was visible. Deputy Ingraham observed that the administrator of the laptop computer is "Staydown Entertainment."

g. MULL was transported to the San Marcos Station for processing.

h. That same day, Deputy Ingraham interviewed MULL and learned the following:

i. MULL left her home when she was approximately fifteen years old;

ii. MULL met "Chris Young" (believed to be LAWSON) on the street in New Orleans about a month after she left her home in March 2006;

iii. When MULL and LAWSON met, LAWSON gave MULL

his card which indicated that he was in the adult entertainment business;

    iv. The next day, MULL departed New Orleans with LAWSON for Florida.

    v. MULL left with LAWSON knowing that she would be working for LAWSON as a prostitute;

    vi. MULL lived with LAWSON in Miami, Florida for approximately two years wherein MULL worked "the blade"[5] in Flagler, and South Beach, Florida;

    vii. LAWSON told her to "date white guys," how to tell if someone was a cop or not, and "lots of other stuff;"

    viii. LAWSON told her how much to charge and to "stay in pocket;"

    ix. MULL would "work the streets" and return to their apartment in the morning;

    x. When MULL arrived at the apartment in the morning, MULL would give LAWSON all the money she made;

    xi. MULL did not keep any of the money she made;

    xii. Initially, MULL and LAWSON lived in hotel rooms until they made enough money to rent an apartment;

    xiii. LAWSON provided MULL with clothing and other things;

---

[5] Based on my training and experience, the "blade" is any street or area where prostitutes commonly engage in soliciting for prostitution.

10

xiv. After MULL and LAWSON left Miami, Florida, they went to Houston and Dallas, Texas;

xv. In both cities, MULL "worked" through www.craigslist.org;

xvi. MULL and LAWSON then traveled to Phoenix, Arizona where MULL "worked the blade" near 51st and Hillcroft;

xvii. MULL and LAWSON eventually ended up in San Diego, California;

xviii. MULL didn't know if LAWSON had friends in all of the places they had traveled to, but MULL stated that it was "none of her business" which was established as one of the "rules;"

xix. Since arriving in California, MULL has lived from hotel to hotel;

xx. MULL has also worked as a prostitute in Orange County, Hollywood, and Las Vegas, Nevada;

xxi. MULL was arrested in Hollywood around the time of her eighteenth birthday for escorting without a permit;

xxii. LAWSON was contacted by law enforcement at the time of MULL's arrest, but was not in the room. LAWSON was driving his blue Chevy Tahoe at the time;

xxiii. MULL is not allowed to look at LAWSON's friends and has to put her head down if they are around. If MULL looks at another guy, she is considered "out of pocket." This is

11

another example of the "rules" MULL is required to follow;

      xxiv.    MULL refers to LAWSON as "Daddy;"

      xxv. LAWSON refers to MULL as "Honey" or "Bitch;"

      xxvi.    MULL referred to another "girl" by the name of "Krissy;"

      xxvii.    MULL taught Krissy some things, but LAWSON mostly taught and talked to Krissy;

      xxviii.    MULL believes that Krissy is seventeen and from Florida and that her real name is "FM;"

      xxix.    "FM" goes by the name "Krissy" and "Angel;"

      xxx. MULL refused to provide law enforcement with a home address;

    7.   I reviewed the Tennessee Internet Crime Information Center National Center website and observed a poster for a missing female. Depicted in the poster was a photo of MULL, with the words "Missing Child Endangered Runaway" on the top of the poster. The poster stated that MULL was last seen on March 4, 2006 in Memphis, Tennessee.

    8.   On May 4, 2009, I reviewed a Los Angeles Police Department arrest report, DR08-09-27814, and learned that on September 17, 2008 (MULL was 17 years old on this date), "Amber Nycole Erne," also known as "Honey," was arrested for a violation of Los Angeles Municipal Code Section 130.107.1: No Escort

Permit, at the Days Inn on Coldwater Canyon and Ventura Boulevard in Hollywood, California. I also reviewed a Los Angeles Police Department traffic citation, number 89 39403, and learned that on September 17, 2008, "Christopher Tyrone Lawson" was cited for a California Vehicle Code violation on Coldwater Canyon and Ventura Boulevard in Hollywood, California.

9. On May 6, 2009, I spoke with Immigration and Customs Enforcement Special Agent Eddy Wang. SA Wang queried the National Law Enforcement Teletype System for Florida driver's license number G526-730-86-512-0 in the name of "Samera Mull," date of birth XX/XX/1986 and was unable to locate a record.

10. On May 6, 2009, I queried the California Law Enforcement Teletype System for MULL and discovered that MULL was arrested/cited on or about September 21, 2008 for Loitering/Prostitution in violation of California Penal Code Section 653.22 and Unauthorized Use of Personal Identifying Information of Another in violation of California Penal Code Section 530.5(a). On or about April 10, 2009, in the California Superior Court, County of San Diego, MULL was convicted of both counts and sentenced to three years probation and 45 days jail. MULL is currently detained at Las Colinas Detention Facility in San Diego County.

//
//

## IX. CONCLUSION

11. Based on the foregoing, I believe that there are sufficient facts to establish that material witness SAMERA LATIFAH MULL's testimony is material in a criminal proceeding and that she should be designated as a material witness and an arrest warrant should be issued pursuant to 18 U.S.C. § 3144.

                                                _/s/ Ashley L. Mericle_
                                                Ashley L. Mericle
                                                Special Agent
                                                Federal Bureau of Investigation

SUBSCRIBED TO AND SWORN BEFORE ME
THIS 7TH DAY OF MAY 2009

_/s/ ROBERT N. BLOCK_
UNITED STATES MAGISTRATE JUDGE

**CERTIFICATE OF SERVICE BY MAIL**

I, **LINDA LEWIS**, declare: That I am a citizen of the United States and resident or employed in Orange County, California; that my business address is United States Attorney's Office, 411 West Fourth Street, Suite 8000, Santa Ana, California 92701; that I am over the age of eighteen years, and am not a party to the above-entitled action;

That I am employed by the United States Attorney for the Central District of California, who is a member of the Bar of the United States District Court for the Central District of California, at whose discretion the service by mail described in this Certificate was made; that on <u>May 7, 2009</u>, I deposited in the United States Mails, United States Attorney's Office, 411 West Fourth Street, Suite 8000, Santa Ana, California 92701 in the above-entitled action, in an envelope bearing the requisite postage, a

copy of: **GOVERNMENT'S MOTION FOR DESIGNATION, ARREST, AND DETENTION OF MATERIAL WITNESS; MEMORANDUM OF POINTS AND AUTHORITIES; AFFIDAVIT OF ASHLEY MERICLE**

addressed to:  Anne Hwang
              Office Of The Federal Public Defender
              411 W. Fourth Street, Suite 7110
              Santa Ana, CA 92701

at their last known address, at which place there is a delivery service by United States Mail.

This Certificate is executed on <u>May 7, 2009</u>, at Santa Ana, California. I declare under penalty or perjury that the foregoing is true and correct.

*Linda Lewis*
Linda Lewis