UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

SOUTHERN DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>    Plaintiff,<br><br>    v.<br><br>DWAYNE LAWSON,<br><br>    Defendant. | Case No.: SACR 09-00095-CJC<br><br>ORDER ACCEPTING THE PARTIES' PLEA AGREEMENT |

## I. INTRODUCTION

On May 5, 2010, the Government filed a First Superseding Indictment in which Mr. Lawson was charged with violating 18 U.S.C. § 1591, sex trafficking of children by force, fraud or coercion, 18 U.S.C. § 2423(a), transportation of a minor for prostitution, and 18 U.S.C. § 2251(a), production of child pornography. The Government and Mr. Lawson have entered into a binding plea agreement pursuant to Federal Rule of Criminal Procedure 11(c)(1)(C). Mr. Lawson has agreed to plead guilty to the sex trafficking count, and the parties have stipulated to a 210-month sentence. The Court now must decide whether the parties' plea agreement is in the interest of justice. After carefully considering the evidentiary record, the arguments of

counsel and the recommendations of the USPO, the Court believes that the parties' plea agreement is in the interest of justice, and, accordingly, accepts it.

## II. BACKGROUND

Mr. Lawson has the initials "ICCPPP" tattooed on his back, which reportedly stands for International Cross Country Professionally Paid Pimp.[1] (Presentence Investigation Report ("PSR") ¶ 70.) He met two of his teenaged victims, S.M. and F.M., when they were just fifteen and seventeen years old, respectively. (Plea Agreement, dated May 28, 2010 ("Plea Agmt.") ¶ 10; PSR ¶¶ 7, 8.) S.M. and F.M. identified at least five other girls who worked for Mr. Lawson, but they were not sure of their true names or ages. (PSR ¶ 13.)

Mr. Lawson met S.M. in New Orleans in March of 2006. (PSR ¶ 7.) She had recently left home. (PSR ¶ 7.) Mr. Lawson gave her a card indicating that he worked in the adult entertainment business. (PSR ¶ 7.) The very next day, Mr. Lawson took S.M. to Florida where she was to work as a prostitute. (PSR ¶ 7.) S.M. lived with Mr. Lawson and gave him all of the proceeds from her prostitution. (PSR ¶ 7.) Though Mr. Lawson knew that S.M. was not eighteen, he took S.M. to Texas, where her prostitution services were advertised on the internet, and thereafter to Arizona, where she worked "the blade," which was an area known for prostitution. (Plea Agmt. ¶ 10; PSR ¶¶ 7, 29.) Eventually they arrived in San Diego, and S.M. again worked as a

---

[1] In December of 1998, Mr. Lawson was arrested and eventually pleaded guilty in Florida for carrying a deadly weapon (a pellet gun) with a mask. (PSR ¶¶ 55-57.) He was released from prison on March 2, 2002. (PSR ¶ 56.) He also has three outstanding arrest warrants from the state of Florida for resisting an officer, drug possession and weapons charges, which were issued in December of 2003 and February of 2004. (PSR ¶¶ 64-66.)

prostitute in Orange County and Hollywood, as well as in Las Vegas, Nevada.  (Plea Agmt. ¶ 10; PSR ¶ 7.)  S.M. was allegedly raped by numerous "Johns."  (PSR ¶ 7.)

Though her profile stated that she was only seventeen, Mr. Lawson contacted F.M. via MySpace in October of 2008.  (Plea Agmt. ¶ 10; PSR ¶ 8.)  They started to chat on the computer and then by phone.  (PSR ¶ 8.)  In November of 2008, Mr. Lawson enticed F.M. to come to meet him by telling her he had a house, cars and money, and he bought her a bus ticket so that she could travel from Florida to Las Vegas, Nevada.  (Plea Agmt. ¶ 10; PSR ¶ 8.)  F.M. traveled for three days, and Mr. Lawson, after ensuring that F.M. had not been followed, picked her up at the bus station in Las Vegas.  (PSR ¶ 8.)  He took her to a hotel and introduced her to S.M.  (PSR ¶ 8.)  He instructed her to call her foster parent using a caller ID blocked number so that she could tell them that she was all right.  (PSR ¶ 8.)  The next day, Mr. Lawson required F.M. to leave all of her belongings behind in Las Vegas, and he drove both victims to Orange County, California.  (PSR ¶ 8.)

Once they had settled into a hotel in Anaheim, California, Mr. Lawson told F.M. the "rules."  (PSR at ¶¶ 9-10.)  She was to charge $120 for one half hour and $250 for a full hour.  (PSR at ¶ 9.)  She was not to kiss men on the mouth.  (PSR at ¶ 9.)  Mr. Lawson bought her a cell phone and coached her on how to talk to customers.  (PSR at ¶ 9.)  He took photographs of her bare breasts, buttocks, and vagina and placed them in a posting for sex on Craigslist.com.  (PSR at ¶ 9.)  Mr. Lawson knew that F.M. was not yet 18.  (Plea Agmt. ¶ 10.)

F.M. would meet up with customers who called her on the cell phone, and she either performed oral sex or they had vaginal intercourse with her.  (PSR at ¶ 9.)  Eventually, Mr. Lawson told her to work "on the track," which is the street or area

where prostitutes commonly work. (PSR at ¶ 10.) S.M. taught her how to work the track. (PSR at ¶ 10.) F.M. worked on the track in Anaheim, Pomona, and Montclair, California and in Las Vegas, Nevada. (PSR at ¶ 10.) She rented hotel and motel rooms with the fake ID that Mr. Lawson had procured for her in Los Angeles. (PSR at ¶ 11.) Mr. Lawson also gave F.M. ecstasy and had unprotected sex with her. (PSR at ¶ 12.)

In February of 2009, F.M. bought a bus ticket and left Mr. Lawson. (PSR ¶ 12.) Unfortunately, she eventually was persuaded to return to work for him. (PSR ¶ 12.) When F.M. was arrested for prostitution in March of 2009, the officers discovered that she was an endangered runaway minor. (PSR ¶ 8.)

In April of 2009, the Government filed a one-count indictment in which Mr. Lawson was charged with violating 18 U.S.C. § 1591, sex trafficking of children by force, fraud or coercion. In September of 2009, Mr. Lawson pled guilty to a single count of violating 18 U.S.C. § 1591. The parties had entered into a binding plea agreement pursuant to Federal Rule of Criminal Procedure 11(c)(1)(C). In the plea agreement, the parties stipulated to an offense level of 33. The parties agreed to a base offense level of 30 pursuant to U.S.S.G. § 2G1.3(a)(2). The parties then added two levels for the use of a computer under U.S.S.G. § 2G1.3(b)(3), added two levels for commission of a sex act or sexual contact under U.S.S.G. § 2G1.3(b)(4), added two levels for multiple victims under U.S.S.G. § 2G1.3(d)(1), and subtracted three levels for acceptance of responsibility under U.S.S.G. § 3E1.1. (First Plea Agreement ("First Plea Agmt.") ¶ 14.) The stipulated sentence called for: (a) a special assessment of $100; (b) restitution in an amount and pursuant to a schedule fixed by the Court; (c) a sentence of imprisonment based on the low-end Guidelines range for offense level

33 and a criminal history category calculated by the Court, which calculated to 168 months, plus a five-year period of supervised release. (First Plea Agmt. ¶ 15.)

Soon thereafter, the USPO submitted its presentence report and recommendation. The USPO calculated a Guidelines range of 210-262 months based on a total offense level of 35 and a criminal history category of III. (PSR ¶¶ 44, 61.) This calculation was founded on a base offense level of 30 pursuant to U.S.S.G. § 2G1.3(a)(2). The USPO then added two levels for unduly influencing a minor under U.S.S.G. § 2G1.3(b)(2)(B), added two levels for use of a computer under U.S.S.G. § 2G1.3(b)(3), added two levels for commission of a sex act or sexual contact under U.S.S.G. § 2G1.3(b)(4), added two levels for multiple victims under U.S.S.G. § 2G1.3(d)(1), and subtracted three levels for acceptance of responsibility under U.S.S.G. § 3E1.1. (PSR ¶¶ 18-44.) The enhancement pursuant to U.S.S.G. § 2G1.3(b)(2)(B) was included because Mr. Lawson was twenty-seven years old and F.M. was seventeen years old at the time of the offense. The relevant application note for § 2G1.3(b)(2) states that when determining whether there was undue influence, "the court should closely consider the facts of the case to determine whether a participant's influence over a minor compromised the voluntariness of the minor's behavior." U.S.S.G. § 2G1.3, Commentary. The application note also states that "there shall be a rebuttable presumption" of undue influence when a participant is at least 10 years older than the minor. U.S.S.G. § 2G1.3, Commentary. The USPO had also calculated five criminal history points, or a criminal history category of III. (PSR ¶¶ 60-61.) The criminal history category was based on Mr. Lawson's 1999 Florida conviction for carrying a deadly weapon with a mask, for which he received three criminal history points pursuant to U.S.S.G. § 4A1.1(a) and 4A1.2(e)(1). Pursuant to U.S.S.G. § 4A1.1(d), an additional two points are added if the defendant committed the instant offense while under any criminal justice sentence, including probation.

The Orange County Circuit Court in Orlando, Florida issued a warrant for failure to report to probation that was still outstanding when the instant offense began in at least November of 2008, accordingly, the USPO added two points. (PSR ¶ 59.) The USPO recommended that Mr. Lawson be sentenced at the high-end of the range of the Guidelines, 262 months imprisonment, a lifetime of supervised release, and a special assessment of $100. (Rec. Ltr. at 1.)

Subsequently, on March 15, 2010, the Court determined that a 168-month sentence constituted a downward variance from the Guidelines and that Mr. Lawson's crime warranted a prison sentence greater than 168 months. As a result, the Court rejected the plea agreement. Following this, Mr. Lawson withdrew his guilty plea and the case was set for trial.

On May 5, 2010, the Government filed a First Superseding Indictment in which Mr. Lawson was charged with violating 18 U.S.C. § 1591, sex trafficking of children by force, fraud or coercion, 18 U.S.C. § 2423(a), transportation of a minor for prostitution, and 18 U.S.C. § 2251(a), production of child pornography. Thereafter, Mr. Lawson and the Government discussed and reached a second, binding plea agreement under which Mr. Lawson would plead guilty to one count of violating 18 U.S.C. § 1591, knowingly transporting a minor knowing that force, fraud or coercion would be used to cause the victim to engage in a commercial sex act or knowing that the minor had not achieved the age of eighteen. The new plea agreement contains a stipulated sentence pursuant to Federal Rule of Criminal Procedure 11(c)(1)(C). The parties stipulated to an offense level of 35 and a criminal history category to be calculated by the Court. (Plea Agmt. ¶ 14.) The parties agreed to a base offense level of 30 pursuant to U.S.S.G. § 2G1.3(a)(2). (Plea Agmt. ¶ 14.) In addition, the parties added two levels for unduly influencing a minor under U.S.S.G. § 2G1.3(b)(2), added

two levels for the use of a computer under U.S.S.G. § 2G1.3(b)(3), added two levels for commission of a sex act or sexual contact under U.S.S.G. § 2G1.3(b)(4), added two levels for multiple victims under U.S.S.G. § 2G1.3(d)(1), and subtracted three levels for acceptance of responsibility under U.S.S.G. § 3E1.1.  (Plea Agmt. ¶ 14.) The stipulated sentence calls for: (a) a special assessment of $100; (b) restitution in an amount and pursuant to a schedule fixed by the Court; (c) a sentence of imprisonment based on the low-end Guidelines range for offense level 35 and a criminal history category calculated by the Court, which calculates to 210 months, followed by a period of intensive supervised release ranging from five years to life, to be determined by the Court.  (Plea Agmt. ¶ 15.)  The Court must now decide whether to accept the plea agreement or proceed to trial.

## III.  ANALYSIS

Rule 11 is the "principal provision in the Federal Rules of Criminal Procedure dealing with the subject of guilty pleas and plea agreements." *United States v. Hyde*, 520 U.S. 670, 673-74 (1997).  The plea agreement before the Court is governed by Rule 11(c)(1)(C) because the Government has "agree[d] that a specific sentence or sentencing range" should apply to Mr. Lawson.  FED. R. CRIM. P. 11(c)(1)(C); *In re Ellis v. United States District Court*, 356 F.3d 1198, 1206 n.12 (9th Cir. 2004) (en banc).  When the parties reach this type of plea agreement, "the court has three options: it may accept the agreement, reject it, or defer a decision until the court has reviewed the presentence report." *Ellis*, 356 F.3d at 1206 (quoting FED. R. CRIM. P. 11(c)(3)(A)) (internal quotations omitted).  Although the court is free to accept or reject the plea agreement, it may not do so on a piecemeal basis, and the Rule 11(c)(1)(C) stipulated sentence is binding upon the court's acceptance of the plea agreement.  *In re Morgan v. United States District Court*, 506 F.3d 705, 709 (9th Cir.

2007). Conversely, if the court chooses to reject the plea agreement, the defendant must be provided with an opportunity to withdraw his guilty plea and an advisement that if the guilty plea is not withdrawn, "the court may dispose of the case less favorably toward the defendant than the plea agreement contemplated." FED. R. CRIM. P. 11(c)(5).

When presented with a Rule 11(c)(1)(C) plea agreement, "it is not only permitted but expected that the court will take an active role in evaluating the agreement." *United States v. Kraus*, 137 F.3d 447, 452 (7th Cir. 1998). As the district court traditionally exercises broad discretion over all aspects of criminal sentencing, whether to accept or reject a plea agreement containing a stipulated sentence is likewise left to the sound discretion of the court. *Morgan*, 506 F.3d at 712 (citing *Vasquez-Ramirez v. United States Dist. Court*, 443 F.3d 692, 699 (9th Cir. 2006)); *United States v. Nicholson*, 231 F.3d 445, 451 (8th Cir. 2000); *United States v. Bean*, 564 F.2d 700, 703 (5th Cir. 1977)). This discretion, however, is not limitless. This Court understands that the principle of separation of powers requires that the executive branch—the Government in this case—retain discretion over the charging decision. As the Ninth Circuit explained in *United States v. Miller*, 722 F.2d 562, 564 (9th Cir. 1983):

> When a prosecutor selects a charge, he has made an executive choice. When a judge sentences a defendant, he has made a judicial choice. When a plea bargain is placed before a court, the necessary interplay between the charging and sentencing decisions becomes manifest.

Because the Government seeks to bind the Court to a stipulated sentence, the Court has an obligation to fulfill its traditional sentencing role by conducting a careful analysis of the proposed plea agreement and stipulated sentence.

The guiding principle in this analysis is one very familiar to the Court: the interest of justice. *See Ellis*, 356 F.3d at 1209 (affirming the rejection of a plea agreement that the district court found was not in the interest of justice given the defendant's criminal history and offense conduct); *Gov't of the Virgin Islands v. Walker*, 261 F.3d 370, 375 (3d Cir. 2001) ("A sentencing court can, of course, reject the results of a plea negotiation if it concludes that the resulting agreement is not in the best interest of justice.")  In applying this standard, some courts have considered whether the sentence itself is too lenient. *Ellis*, 356 F.3d at 1209 (explaining that Rule 11 allows for the rejection of a plea agreement "when the court believes the sentence is too lenient"); *United States v. Greener*, 979 F.2d 517, 520 (7th Cir. 1992) (holding the district court did not abuse its discretion by concluding the plea "would not adequately represent the defendant's criminal conduct"); *Bean*, 564 F.2d at 704 ("A decision that a plea bargain will result in the defendant's receiving too light a sentence . . . is a sound reason for a judge's refusing to accept the agreement.").  Others have looked to whether the plea agreement complies with and advances the purpose of criminal sentencing as expressed by Congress. *United States v. O'Neill*, 437 F.3d 654, 661 (7th Cir. 2006 ) (Posner, J., concurring) (observing that § 3553a sentencing factors can provide a standard for evaluating the acceptability of a plea agreement); *United States v. Torres-Echavarria*, 129 F.3d 692, 696 (2d Cir. 1997).  The Court's inquiry into whether the plea agreement is in the interest of justice must be based on an "individualized analysis of the specific facts presented by the case." *Morgan*, 506 F.3d at 711 n.3 (citing *United States v. Smith*, 417 F.3d 483, 486-87 (5th Cir. 2005); *United States v. Gamboa*, 166 F.3d 1327, 1330-31 (11th Cir. 1999); *Greener*, 979 F.2d at 519-20; *United States v. Carrigan*, 778 F.2d 1454, 1462 (10th Cir. 1985)).

The parties' stipulated sentence, which calls for 210 months imprisonment, or approximately 17.5 years imprisonment, is in the interest of justice.  While the interest

of justice is animated by many fundamental concepts, several are paramount to criminal sentencing. To serve justice, the sentence must reflect the severity of the offense conduct, including all the facts and the circumstances of the crime. It must afford adequate deterrence to discourage further crimes. It must protect the public from further crimes of the defendant. And it also must avoid unwarranted sentencing disparities. *See generally* 18 U.S.C. § 3553(a); U.S.S.G. § 6B1.2, Commentary. The parties' plea agreement satisfies these important principles.

The parties' stipulated sentence is an appropriately lengthy one given the nature of Mr. Lawson's crime. Mr. Lawson's crime involves the sale of teenage girls' bodies and the destruction of their human dignity. His crime offends one of our most cherished human rights: that all people have the right to liberty and self-determination. This fundamental right guarantees our freedom from bodily exploitation and our entitlement not to have our bodies used by others as a source of profit. Mr. Lawson chose to violate this basic right when he benefited from the sexual exploitation of teenage girls who, because of their vulnerable and powerless status and individual predicaments, subjected themselves to cruel and inhumane mistreatment. This is Mr. Lawson's crime. It is a very serious and disturbing one. A prison sentence of 210 months, although very significant, is not unjust or unduly punitive for Mr. Lawson's crime.

The parties' stipulated sentence is also sufficient to deter Mr. Lawson and others from committing future crimes of this nature. A 210-month prison term is nearly two decades. During this time, Mr. Lawson will be unable to share in family events or have extensive contact with loved ones. His freedom will be severely constricted and he will be isolated from the outside world. By the time he is released, he will have spent most of his adult life behind bars. No rational person would be

tempted to commit Mr. Lawson's crime and risk such a deprivation of freedom and liberty.

In addition, Mr. Lawson is now 29 years old and will not be a young man after serving a 210-month prison sentence. Indeed, he will be nearly 47 years old when released. By that time, Mr. Lawson's desire, energy, and capacity to convince other young victims to sell themselves will be severely diminished. A prison term of 210 months clearly protects the public from further crimes of Mr. Lawson.

The parties' stipulated sentence also avoids sentencing disparities. Courts have repeatedly recognized that Congress established the Sentencing Commission to help create national sentencing standards. *Kimbrough v. United States*, 552 U.S. 85, 108 (2007). Most often, "the Commission's recommendation of a sentencing range will 'reflect a rough approximation of sentences that might achieve § 3553(a)'s objectives.'" *Id.* (quoting *Rita v. United States*, 551 U.S. 338, 350 (2007)). Here, the parties stipulated to a sentence at the low-end of the Guidelines range, and that range took all of the most troubling aspects of Mr. Lawson's crime into account, including multiple victims, the use of a computer, unduly influencing a minor, and the commission of a sex act. Consequently, a sentence at the low end of the range of the Guidelines, as stipulated to by the parties, reflects the fair and just sentence for Mr. Lawson's offense.

There are other compelling factors that also must be considered in the Court's determination of whether the parties' stipulated sentence is in the interests of justice. One such factor is Mr. Lawson's disadvantaged background. Mr. Lawson's father was a drug addict and irresponsible man. (Def.'s Position Re: Plea Agreement, Ex. A, Letter to the Court from Dwayne Lawson.) His mother worked to support the family

and so was frequently away from the home, which meant that Mr. Lawson raised himself and his little brother alone. Mr. Lawson lived in a poor neighborhood and often had to sleep on the floor to avoid gang fire. When he was a teenager, his father finally took an interest in him, but he treated him like a "thug" and introduced him to a world of prostitution. His father explained that prostitution was a business. Women were viewed as chattels, and sex was presented as a profitable enterprise rather than an intimate expression of love and respect. Given his background, it is not surprising that Mr. Lawson had a very distorted understanding of sex and women.

Another compelling factor that must be considered in the Court's determination is Mr. Lawson's acceptance of responsibility and remorse. Mr. Lawson used to believe that living the life of a pimp was glamorous. But he admits that he sees things differently now. He knows what he did was terribly wrong and he knows that he must be severely punished for his crime. He wants the opportunity to one day make something of his life. The Court sees no reason why, after serving a significant 210-month sentence, Mr. Lawson should not be given that opportunity.

Finally, the Court would be remiss if it did not take into account the mental health and well-being of the victims. Their mental and physical suffering cannot be understated. They have had to experience and endure unconscionable acts of violence, cruelty, and disrespect. A trial would force them to relive their painful past and disclose embarrassing details about it. Accepting the parties' plea agreement would spare the victims of this humiliation and trauma. It might even bring closure and let them move on with their lives.

## IV. CONCLUSION

The parties' plea agreement is in the interests of justice. The stipulated sentence of 210 months achieves all the objectives of sentencing and provides just punishment for Mr. Lawson's offense. Accordingly, the Court accepts the parties' plea agreement.

DATED:    June 14, 2010

_____

CORMAC J. CARNEY
UNITED STATES DISTRICT JUDGE